JOSEPH TILLER

*v.*

STATE OF ILLINOIS.

*Opinion filed November 28, 1922.*

GOVERNMENTAL FUNCTION—*State is not liable for injuries sustained by an inmate of its institutions during the period of his confinement.* The State in conducting the Joliet Penitentiary exercises a governmental function and is not liable for injuries sustained by the inmates thereof during the period of their confinement.

WORKMAN'S COMPENSATION ACT—*Sec. 5. (Session Laws, 1913, page 340) construed.* The word "employee" as used in the Workman's Compensation Act of 1913, means:

1. Every person in the service of the State under appointment, or contract for hire, express or implied, oral or written, except any official of the State, etc.

2. Every person in the service of another under any contract or hire, express or implied, oral or written.

CONTRACTUAL RELATION—*does not exist between State and inmates of its institution.* Claimant when convicted of crime and sentenced to the State Prison, forfeited his liberty and civil rights, his right to contract and be contracted with—all are suspended during his confinement as a part of the penalty for his crime; and no contract of employment for hire, express or implied, exist between him and the State.

Edward J. Brundage, Attorney General, for State.

This is a claim filed by Joseph Tiller, claimant, an inmate of Joliet State penitentiary of Illinois for compensation for alleged injuries incurred by him while serving, under sentence, and doing time as a convict under the laws of the State.

The facts, as disclosed by the evidence are briefly stated, and are as follows:

On December 31st, 1914, while an inmate of the State penitentiary at Joliet, the claimant who had been assigned the duty of "Ash-pit man," while in the act of cleaning out the ashes from the pit, was badly burned by steam, ashes, etc. The pit, early in the morning, had become filled with water from the boiler, out of which, the flue had blown a short time prior to the accident.

At the request of the chief (officer we suppose) who asked for volunteers to go down in the ash pit and clean it out, claimant volunteered to undertake the job. It is stated in the declaration and argument of counsel for claimant, that the cleaning out of the ash-pit at this particular time, under the particular circumstances, to-wit: The ash pit being full of water and the boiler flues blown out, was a very dangerous operation." The fires in the furnace above had not yet been cleaned out. However, in response to such call for volunteers, the claimant volun-

teered and went down into the ash-pit, which was about four feet deep in water, to clean it out. The water came up to his breast. Claimant went to the manhole to get the car in which to load the refuse from the pit, and while so doing, the fireman (whom we assume was a fellow-convict), turned the grate, releasing a large quantity of fire, ashes, etc., which fell into the water, in the pit, causing an explosion by reason of the contact of the fire and water, and the claimant was badly scalded and burned by the steam thus produced, his arms, hands, face, neck, chest, both ears partially burned off, eyelids on left eye partially burned off, left ear entirely closed up, and caused a cataract on left eye. He was entirely blind in his right eye when he was admitted as a convict in said institution, the cause of which, is not disclosed by the evidence. The sight of the left eye is damaged to the extent of ¾ of normal vision. These afflictions laid him up and he was confined in the prison hospital for eleven months. Before his incarceration in the penitentiary, he was a strong able bodied man, except he was totally blind in right eye. He has since his confinement in the prison and prison hospital, been "released," and is working in Chicago, shoveling coal. He says the prison authorities promised to help him in some way, and that he thought his claim had been filed with the Court of Claims long ago. The declaration states that he believes that this claim has never been presented to any State institution or State officer for payment.

The evidence does not disclose the full extent of his physical disability and our information as to that is mostly drawn from inference from the facts in evidence.

The attorney in his argument and brief states that claimant knew that the act of cleaning out the pit at that time was one of peril and dangerous, and that he, the claimant, was not required or coerced to undertake the "job," but that it was a voluntary act of the claimant in response, however, to a request of the "chief" for volunteer to undertake the task. The attorney classes the claimant as a hero for his attempt to perform this perilous act under circumstances very unusual and hazardous. As the flues had blown out and the pit filled with water, we assume that the cleaning out of the pit at that time was an emergency; and being done at an unusual hour, the fireman, who evidently had not been informed by claimant or any one else of his intentions to enter the pit at that time, turned the grates and let fire and ashes into the water-filled pit below while claimant was at the manhole getting the car, with results, as stated.

The claimant, is a married man, his first wife being dead, and he has married subsequent to his release. That claimant was badly and seriously injured, there can be no doubt, which might have been avoided by claimant or the "chief" giving notice to the fireman of the presence of the claimant in the ash-pit below. But this claim is brought on the theory that the claimant is entitled to compensation under the laws of the Workmen's Compensation Act, citing said Court of Claims Law. Session Laws of 1917, section 6, paragraph 6 in support of his right of action.

This case does not come under the "Workmen's Compensation Act."

The claimant's attorney defines the word "Employer" to mean the "State, County," etc., which is correct; but does not define the word "Employee" as used in said Act.

Section 5, page 340, Session Laws 1913, under what is known as "Workmen's Compensation Act," the word "Employee" is defined as follows: "The term 'Employee' as used in this Act, shall be construed to mean. First—Every person in the service of the State, County, etc., under appointment, or contract of hire, expressed or implied, oral or written, except any official of the State, etc."

The claimant was duly convicted of crime, sentenced to the penitentiary to serve his sentence. He had by his crime forfeited his right of personal liberty, his right of social and business relations with the world, his citizenship, his civil rights to contract or to be contracted with, to collect his earnings from any work he might do while serving his sentence, were suspended and his earnings go to the State, as a part of penalty for his crime. There is no employment, express or implied, for hire between the State and its convicts. The convict has no control over his time, right of occupation or money. The State authorities even prescribe the articles of food and the quantity of each kind, which shall be provided for the convicts; and shall determine the number of hours each day they shall be required to labor. Smith's Illinois Revised Statute 1921, chapter 108, section 13.

The labor of the convict is under the direction of the warden, and goes toward keeping up the expenses of the operation of the penitentiary. Smith's Rev. State, 1921, chapter 108, section 19.

On his discharge, each convict is furnished a suit of clothing, transportation and $10.00 cash, and whatever small incidental allowances he may have earned by working overtime while hired or leased out to some contractor. Section 21, same chapter, same Statute. This is by consent of warden, and under his supervision. Chapter 108, penitentiaries show clearly the relation of State and its convicts.

Harper's Workmen's Compensation second edition, page 185, section 98 says: It has been said "Employer" and "Employment" are not of the technical language of the law or any science or pursuit and must therefore be construed according to the context and approved usage of language.

Accepting the term therefore in its ordinary signification, an employer is held to be one who uses or engages the services of another for pay. An "Employee" has already been defined by Statute to mean a person in the employ of another, under contract for hire. To pass a law making the State liable for injuries or death to convicts occurring while serving sentence would not tend to the betterment of the economic condition in the State.

It would open a floodgate for the prosecution of numberless questionable claims by an undesirable class of people; most of whom care but little for themselves or the interest of others, or the laws of the State.

The State is not an industrial insurance company for its convicts.

Such laws, if passed, would be contrary to public policy and void. While we sympathize with this claimant in his injured condition, yet we cannot find a shadow of law, whereby he may maintain a claim.

The doctrine of *respondeat superior* is not applicable to the State in this case.

> *Henry Henke* v. *State,* Vol. 2, page 11, C. of C. and cases cited.
>
> *Schmidt* v. *State,* 1 Court of Claims, page 76.

The claimant does not show a legal or equitable cause at action.

For the reasons set forth, the demurrer is sustained, and that case dismissed.